### 29260. ELLIS v. RICH'S, INC. et al.

UNDERCOFLER, Presiding Justice.

This case involves a claim for damages for plaintiff's injuries caused by a defective fondue pot manufactured, distributed and sold at retail by the various defendants.

In December, 1970, Mrs. Esther Brake bought four fondue pots from a Richway store in Smyrna, Georgia. She gave one of the pots, wrapped in the original unbroken carton, to Mrs. Mary Ellis, plaintiff herein and applicant in certiorari, as a Christmas gift. Plaintiff's husband then assembled the handle to the pot. Plaintiff used the pot on four or five occasions without incident until February 28, 1971, when the pot, filled with hot cooking oil, spun over on its handle as she attempted to place it on a coffee table in her den. Hot oil spilled on her legs causing the injuries which are the subject of this action. Plaintiff testified that writing on the carton in which the pot was packaged indicated that "it was a product of Japan or something." The word "Taiwan" was inscribed on the bottom of the pot.

The fondue pot had been manufactured by the defendant Ling Metal Manufacturing Company, a Tai-

wan corporation, and was purchased in Taiwan for importation into this country by the defendant Westwood Imports Co., Inc., a California corporation doing business in this state. Westwood resold the pot to the defendant Richway, Inc., from whose store it was purchased by Mrs. Brake. It was Westwood's practice during the initial stages of purchasing to inspect the merchandise at the factory for purposes of quality control and marketability in the United States. Westwood would receive samples of the items which it would furnish to its retail customers, including Richway. The merchandise would be shipped directly to the retailer without inspection by Westwood except in cases where the cartons were damaged. Frank Morris, the Secretary and Treasurer of Westwood, testified that prior to plaintiff's complaint Westwood has arranged for shipment of thousands of the fondue pots without notice of any defect in their manufacture or knowledge of any injuries occasioned by their use.

According to affidavits supplied by Richway, the fondue pots it purchased from Westwood had been well received by its customers, without complaint, and based upon this experience Richway continued to order the pots for resale to the general public. The pots were delivered to Richway unassembled in individual boxes and resold to customers in the same, unopened boxes. The purchaser or consumer would have to assemble the handle to the pot before it could be used. Richway neither tested the pots nor arranged to have them tested before resale. According to the affidavit of William Curran, the assistant manager of the Richway store in Smyrna, "it was not the policy of the store management to demonstrate the use of pots or make any representations regarding the safety of the pots. No signs or placards were displayed which contained any representations regarding the safety of the pots."

An affidavit by Dr. James M. Bradford, a mechanical engineer, stated that the "method used to attach the handle to the subject fondue pot is not an acceptable engineering design" and that the "instability of the fondue pot coupled with the unacceptable engineering design of the handle attachment causes this fondue pot to be a hazardous cooking utensil to pick up. In my

opinion therefore, the fondue pot in question is unsafe to use."

Plaintiff brought this action against Ling Metal, Westwood, Richway, and Rich's, Inc., alleging in her amended complaint that each defendant is liable for breach of implied warranties of merchantability and fitness, for strict liability in tort, and for negligence in failing to warn of the defect in the pot's design and construction and in "manufacturing, handling, inspecting, and selling to plaintiff a dangerous and defective, and improperly designed, constructed, and manufactured article." All the defendants answered except Ling Metal. Westwood, Richway and Rich's each filed a motion for summary judgment, and after a hearing each motion was sustained. Plaintiff then appealed to the Court of Appeals, citing as error the trial court's holdings to the effect that (1) Westwood is not liable under the provisions of Code Ann. § 105-106, (2) Westwood, Richway and Rich's are not liable in tort for negligence, (3) neither Richway nor Rich's are liable on an implied warranty theory, and (4) neither Westwood nor Richway can be held strictly liable in tort. The Court of Appeals affirmed the judgment of the trial court, and this court granted plaintiff's application for certiorari.

The issues raised by plaintiff's application for certiorari are (1) whether Westwood, Richway or Rich's are liable on a negligence theory for failure to warn of the defect in the fondue pot's design and construction and in "manufacturing, handling, inspecting, and selling" the defective pot, (2) whether Westwood and Richway are strictly liable in tort, and (3) whether Richway and Rich's are liable for breach of implied warranties of merchantability and fitness.

This is a product liability case. We granted certiorari to consider whether the doctrine of "strict liability" is applicable in Georgia.

"Product liability is the name currently given to the area of case law involving the liability of sellers of chattels to third persons with whom they are not in privity of contract. It may, infrequently, rest upon intent; but except in rare instances, it is a matter of negligence, or of strict liability." Prosser, Law of Torts, 4th Ed.,

p. 641.

Essentially the doctrine of strict liability eliminates questions of negligence in tort actions and the Uniform Commercial Code defenses, including privity, in contract actions for breach of warranty. See Restatement of the Law, Torts 2d, § 402 A.

In the last decade a majority of the states have embraced, in varying degrees, the principle of strict liability in product liability cases. Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 1965/66, 50 Minn. L. R. 791. In some states, "strict liability" has been instituted by statute while in others it has been established by case law. In the final analysis the extent to which "strict liability" is established is a matter of public policy.

As stated in the Restatement of the Law, Torts 2d, § 402 A, comment c: "On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."

Georgia has adhered generally to the traditional concepts requiring proof of negligence in tort actions and privity in contract actions on warranties. However, by the enactment of the Uniform Commercial Code in 1962 privity was extended to "any natural person who is in the family or household of his buyer or who is a guest in his home . . ." Code Ann. § 109A-2—318. Thereafter by Ga. L. 1968, p. 1166, Code § 105-106 was amended to provide, "No privity is necessary to support an action for tort; but

if the tort results from the violation of a duty, itself the consequence of a contract, the right of action is confined to the parties and privies to that contract, except in cases where the party would have had a right of action for the injury done, independently of the contract, *and except as provided in Code § 109A-2—318. However, the manufacturer of any personal property sold as new property, either directly or through a dealer or any other person, shall be liable in tort, irrespective of privity, to any natural person who may use, consume or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained; a manufacturer may not exclude or limit the operation hereof.*" Code Ann. § 105-106. (Ga. L. 1968, pp. 1166, 1167). (1968 Amendment italicized).

The rule of privity in contract actions is made a statutory requirement by Code Ann. § 105-106. In actions based upon the breach of express or implied warranties this requirement is subject only to the exception contained in Code Ann. § 109A-2—318. In addition, the 1968 amendment to Code Ann. § 105-106 imposes "strict liability" upon the manufacturers of new personal property for injury to persons and property as stated therein irrespective of privity. See Taylor, Georgia's New Statutory Liability for Manufacturers, 2 Ga. L. R. 538. In the instant case the manufacturer is not before this court and further construction of the statute here is inappropriate. Our conclusion that it does impose a degree of strict liability upon manufacturers corrects a statement to the contrary appearing in Division 2 of the Court of Appeals opinion under review. More importantly Code Ann. § 105-106 as well as Code Ann. § 109A-2—318 are recent expressions of the legislature establishing but also limiting the public policy of this state in this area. Consequently, these legislative enactments preclude any extension of strict liability by this court. See Titus, Restatement (Second) of Torts, § 402 A and the Uniform Commercial Code, 22 Stanford L. R. 713. Accordingly, appellant cannot proceed against

appellees for "strict liability" because none is a manufacturer.

The Court of Appeals decision is affirmed.

*Judgment affirmed. All the Justices concur, except Gunter, and Hall, JJ., who concur in the judgment only.*

ARGUED NOVEMBER 12, 1974 — DECIDED JANUARY 29, 1975 — REHEARING DENIED FEBRUARY 18, 1975.

*Scheer & Elsner, Robert A. Elsner,* for appellant.

*Lokey & Bowden, James C. Gaulden, Jr., Glenn Frick, Nall, Miller & Cadenhead,* for appellees.

*Kunes & Kunes, G. Gerald Kunes,* amicus curiae.