## 64345. GREENWAY et al. v. PEABODY INTERNATIONAL CORPORATION et al.

DEEN, Presiding Judge.

The Greenways brought two actions against the Peabody International Corp. and the owners of an apartment complex following the death of their six-year-old son Danny. The child was killed on February 16, 1977, while playing in a dumpster-type trash container manufactured by Peabody. An out-of-court settlement was reached with the apartment owners, but the trial court directed a verdict in favor of Peabody on both Mrs. Greenway's wrongful death action, which was based on the theory of negligent design and manufacture,[1] and Mr. Greenway's claim for pain and suffering, loss of services, and funeral expenses based upon both strict liability and negligent design and manufacture.

The evidence showed that the family lived in an apartment complex which did not have a playground and that Danny was frequently seen playing in and on the complex's three dumpsters. His parents were aware that he was attracted to the trash containers and tried to stop him by scolding and/or spanking him. The dumpster in question was manufactured in 1969 and is a large metal container approximately sixty inches high which is known in the industry as a "frontend loader." It was designed with two side doors that could be opened for depositing trash and that had handles only on the outside. One of the doors, however, was inoperable as it had been welded shut. There are two lids on the top of the container which open when the dumpster is raised and turned upside down for emptying into a garbage truck. When the dumpster is lowered, the larger lid closes by the force of gravity, but the smaller lid has a spring device which causes it to remain in an open position approximately twelve to fifteen degrees past vertical unless it is manually closed by the truck driver. (This device apparently allows the lid freedom of movement during dumping so the lid will not be damaged or destroyed and allows it to clear the truck's cab when the dumpster is being lowered.) After dumping, the lid usually remained open and residents of the apartment complex testified that they frequently threw their trash into the dumpster through the open lid rather than open the side door.

The lid was seen open on the day Danny died and he was seen

---

[1] As the death occurred prior to the enactment of the revised version of Code Ann. § 105-1301 in 1978, there could be no recovery for wrongful death under Code Ann. § 105-106. *Ford Motor Co. v. Carter,* 239 Ga. 657 (238 SE2d 361) (1977).

playing near the trash container a short time before he was discovered hanging inside the dumpster with his chin resting on the large lid and the small lid pressing on the back of his neck. He exhibited no vital signs and was pronounced dead on arrival at the hospital. The medical examiner testified that "the cause of death was mechanical asphyxiation, compression of the neck, interference with the ability to receive oxygen, and subsequent physiological changes that resulted from that." Bruises were found on the front of the child's thigh, on his back in the area of the shoulder blade, on his chin and his neck. He also had a friction-type scrape on his chest. The medical examiner testified that these injuries were consistent with the theory that the child was struck in the back by the small lid and slid back into the container, becoming pinned by the neck between the two lids.

1. Appellants contend that the trial court erred in directing a verdict against the negligent design count of the complaints. (The trial court notes in its order that the issue of negligent manufacture has been abandoned and it has not been asserted as an issue on appeal.)

The manufacturer's duty as to product design is discussed in 76 ALR2d 91, Product Liability — Duty as to Design, § 1 [b]: "As to the product-design duty of a manufacturer, the standard which the courts have established is the traditional one of reasonable care; the same standard has been adopted by the authors of the Restatement of Torts." The Restatement of Torts, Second, § 398 provides: "A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design." Under comment b, "If the dangerous character of the plan or design is known to the user of the chattel, he may be in contributory fault if the risk involved in using it is unreasonably great or if he fails to take those special precautions which the known dangerous character of the chattel requires."

The principle that the manufacturer is not an insurer as to product design runs throughout the case law in most jurisdictions. As noted in 76 ALR2d 91, supra at § 2, there are two fundamental rules relating to the manufacturer's duty in designing a product: "[F]irst, the duty is one of reasonable care, under the circumstances; second, neither a manufacturer nor a seller is an insurer that his product is, from a design viewpoint, incapable of producing injury." The first duty is satisfied if the product is reasonably safe for the use for which it is intended. The second rule is grounded on the proposition that virtually any article is capable of causing an injury when put to

particular uses or misuses. As the ALR article points out in § 2 [b], "One who has been injured by a product may seek to hold the manufacturer or seller liable on the theory that the design of the product made it dangerous and apart from whether it was negligent so to design it, negligence inhered in a failure to warn of the danger." The duty here apparently depends upon whether the defect is obvious or concealed either in the design or construction of the product.

In *Stovall & Co. v. Tate,* 124 Ga. App. 605 (184 SE2d 834) (1971), one of the plaintiff's allegations was the negligent design of a power lawnmower which did not have a device to deflect hard objects which were struck by the machine and thrown up from under the mower by the blade. The court found that the design and construction of the mower conformed to industry safety standards and that the manufacturer was not required to warn of common obvious dangers if (1) he has done everything that is necessary to make the machine function properly for the purpose for which it is intended, (2) the product contains no latent defect, and (3) the use of the product creates no latent danger to the user. See also *Poppell v. Waters,* 126 Ga. App. 385 (190 SE2d 815) (1972) (no headlight or reflector on a bicycle) and *Vance v. Miller-Taylor Shoe Co.,* 147 Ga. App. 812 (251 SE2d 52) (1978) (slippery heels on shoes).

The application of the above rules in a negligent design action is found in *Hunt v. Harley-Davidson Motor Co.,* 147 Ga. App. 44, 46 (248 SE2d 15) (1978), wherein this court held: " 'As to the product-design duty of a manufacturer, the standard which the courts have established is the traditional one of reasonable care ... A manufacturer or a seller does not have the status of an insurer as respects products design. Since it is patent that virtually any article, of whatever type or design, is capable of producing injury when put to particular uses or misuses, a manufacturer has no duty so to design his product as to render it wholly incapable of producing injury ...' 63 AmJur2d 70, Products Liability, § 63. 'To impose upon a manufacturer the duty of producing an accident-proof product may be a desirable aim, but no such obligation has been — or, in our view, may be — imposed by judicial decision.' Camp v. Scofield, 301 N.Y. 468 (95 NE2d 802)."

Although we can find no case law in Georgia as to the safety and engineering standards that a manufacturer must comply with in designing his product, it is safe to assume that he is also chargeable with knowledge and information as to engineering and safety factors that are a part of the design development to the extent available at the time the product is manufactured. Wilson v. Savage Arms Corp., 305 FSupp. 1163 (D. C., Pa. 1969).

In the present case, the defendant's design supervisor testified on cross-examination that there are no industrial, federal or state standards as to the design of dumpster-type trash containers and that Peabody's design was very similar to that used by other companies. He testified that the purpose of the design was to provide side doors for loading trash into the container and end doors for unloading the trash into a garbage truck. He further testified that he did not take into account the dumping of trash into the container when the top lid was open as he believed that the side doors adequately served that purpose. Although it can be argued that the defendant could have foreseen that a user would take advantage of an open top lid to place his trash into the container especially if the container was quite full, there is no evidence that an injury resulting from such use ever occurred during the eight years that the dumpster was in service and it is uncontroverted that the decedent's injuries were not caused as a result of using this receptacle for its intended purpose. Despite the testimony of the plaintiff's expert that the dumpster could have been made safe by having ratchet-type handles on the inside of the side doors so that a person inside the container could easily exit if the door was locked from the outside, there was no evidence that anyone ever needed to be inside the container in order to use it for its intended purpose. As to this same expert's testimony that the open top lid could be safely secured by a device which would prevent it from being knocked shut by a gust of wind or an accidental blow, the defect was readily apparent to any user and he would be considered to have assumed the risk in using the container in such a manner as to expose himself to injury.

Plaintiffs also contend that the designer of this container should have foreseen that children would use it as a plaything and designed it with this use in mind. The only evidence as to such a use was the testimony of the plaintiff's expert who testified that the literature was replete with warnings that children might play in these containers. This testimony, however was unspecific. There was no testimony as to what literature contained these warnings, whether the literature was published at or before the time the container was manufactured and the type of container to which it applied. (There was some vague testimony which could be construed as applying the warnings only to containers with sloping sides.) Although the defendant's design engineer testified on cross-examination, he was never asked if he had any knowledge of such warnings at the time the container was designed and manufactured. We find no error in the trial court's grant of a directed verdict in favor of the defendant as the plaintiffs failed to prove negligent design.

2. Mr. Greenway contends that the trial court erred in directing

a verdict in favor of Peabody on the strict liability count of his complaint.

Code Ann. § 105-106 (Ga. L., 1968, p. 1166) which was in effect at the date of Danny's death provides in part: ". . . the manufacturer of any personal property sold as new property . . . shall be liable in tort, irrespective of privity, to any natural person who may use, consume or reasonably be affected by the property . . . because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained . . ."

Several sections of the Restatement of Torts, Second, apply to the liability of the manufacturer of a defective product. § 388 provides: "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Comment k notes that a warning is unnecessary if the defect is obvious.

Under § 394 of the Restatement, "[t]he manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge." Other applicable Restatement sections include 402A which provides for special liability of the seller of a product for physical harm to the user.

In 76 ALR2d 2, Anno: Products Liability — Duty to Warn, p. 28, § 9, it is noted that the duty to warn does not exist as to all product-connected dangers in all situations. ". . . [T]here is no duty to warn of a danger . . . of which the manufacturer or seller has no actual or constructive knowledge, and . . . there is no duty as respects a product which is, as a matter of fact, not dangerous. It is also clear that there is no duty resting upon the manufacturer or seller to warn of a product-connected danger which is obvious, or of which the person who claims to be entitled to warning knows, should know, or should, in using the product, discover." The duty to warn is also discussed in 53 ALR3d 239, Failure to Warn — Strict Liability, § 2 [a], wherein it is observed that "the doctrine applies even though the product is faultlessly manufactured and designed but is nevertheless

dangerous or likely to cause harm unless properly used.

The rules set forth in the Restatement and AmJur have become incorporated into Georgia case law. In *Ellis v. Rich's, Inc.,* 233 Ga. 573 (212 SE2d 373) (1975), it was held that Code Ann. § 105-106 imposed "strict liability" on the manufacturers of new personal property irrespective of privity and without proof of negligence. Before such liability can be imposed on a manufacturer, the plaintiff must show that the product was defective when sold by the manufacturer. If, however, a product is properly manufactured and packaged and accompanied by adequate warnings of anticipated dangers and proper instructions, it cannot be found to be defective. If the user discovers the danger, but makes unreasonable use of the product, he cannot recover. In *Center Chemical Co. v. Parzini,* 234 Ga. 868 (218 SE2d 580) (1975), the court held that the requirement in Code Ann. § 105-106 that the product be "not merchantable and reasonably suited for the purpose intended" means that the product must be shown to be defective when manufactured and it must be determined that the plaintiff's injuries were the proximate result of the defect or caused by some other factor such as the unreasonable acts of the injured person. These views are also found in *Firestone Tire &c. Co. v. Pinyan,* 155 Ga. App. 343 (270 SE2d 883) (1980), wherein this court held that negligence on the part of the manufacturer is not an issue in strict liability; the sole question is whether the defect was the proximate cause of the injuries sustained and the usual negligence defenses may not be asserted. See also *Ford Motor Co. v. Carter,* supra.

*Parzini v. Center Chemical Co.,* 136 Ga. App. 396 (221 SE2d 475) (1975) (conforming opinion to *Center Chemical Co. v. Parzini,* supra) holds that in order to find the manufacturer strictly liable it must be determined (1) whether the product was defective, (2) whether the user knew of the defect and/or danger, and (3) whether the use of the product in view of this knowledge was unreasonable.

The court in *Hunt v. Harley-Davidson Motor Co.,* supra at 45, noted that under comment h to § 402 of the Restatement of Torts, Second, "[a] product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling . . . the seller is not liable. Where, however, he has reason to anticipate that danger may result from a particular use . . . he may be required to give adequate warning of the danger . . . and a product sold without such warning is in a defective condition." The court observed that this provision has been interpreted to mean that "a defective condition obtains *only* when 'the product is, at the time it leaves the seller's hands, in a defective condition not contemplated by the ultimate consumer . . .' " As to the duty to warn, the court held

that there is no duty to warn of obvious or generally known dangers or those of which the user has actual knowledge, and that this rule has manifested itself as the doctrine of assumption of the risk. The court then applied the rule set forth in *Poppell v. Waters,* supra at 387, where that court observed that strict liability applies to products with latent unobservable defects and held that the manufacturer is under no duty to guard against injury from an obvious or patent peril.

In *Talley v. City Tank Corp.,* 158 Ga. App. 130, 137 (279 SE2d 264) (1981), this court again relied upon comment h to § 402A of the Restatement, and held that "[a] duty to warn of danger in the use of a product extends only to the use of the product in the manner reasonably contemplated and anticipated by the manufacturer. When the use to which a product was being put at the time of injury is not that originally intended by the manufacture[r], the determination of whether strict liability may be asserted as a viable theory of recovery or whether the manufacturer is insulated from liability . . . depends, initially, upon the foreseeability that the product would be put to that use."

Applying the above-stated rules to the present case, we find that the product satisfied the codal requirement of being "reasonably suited for the purpose intended" and was not unreasonably dangerous when used as a trash container. (It was, in fact, being used as such by the apartment residents when the child was killed, and there is no evidence of injuries resulting from this use.) If the smaller lid can be considered to be dangerous because it was not secured when in an open position, the danger was obvious and no warnings were required to be given by the manufacturer.

The plaintiff also failed to prove that the manufacturer should have foreseen that a child would play inside the dumpster for the reasons stated in Division 1. We further believe that this situation is analogous to that in Winnett v. Winnett, 310 NE2d 1, 5 (Ill., 1974), where the mother of a four-year-old child brought an action for injuries sustained when the child's fingers became caught in a forage wagon's conveyor belt. Although the court noted that questions of foreseeability are ordinarily for the jury, it found that "[f]oreseeability means that which it is objectively reasonable to expect, not merely what might occur," and held that a manufacturer could not reasonably foresee that a small child would be permitted to approach the machine while it was operating and place her fingers in or on the holes of its moving screen. The same can be said in the present case; the manufacturer cannot be held to reasonably foresee that a small child would be permitted to play in a dumpster.

3. During oral argument of this case the parties were asked to

submit supplemental briefs as to the applicability of *Gregory v. Johnson,* 249 Ga. 151 (289 SE2d 232) (1982), which involved the doctrine of attractive nuisance. We find "[t]he attractive nuisance doctrine by its terms is applied only against a 'possessor of land.' The doctrine would appear inherently inapplicable to products liability cases, and where it has been urged in an action for product-caused harm, recovery has been denied." 63 AmJur2d 160, Products Liability, § 155.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED SEPTEMBER 7, 1982 —
REHEARING DENIED OCTOBER 4, 1982 —

*Charles E. Campbell, Bruce M. Edenfield,* for appellants.
*Jack O. Morse, L. Joseph Loveland,* for appellees.