66930. LODGE et al. v. CHAMPION HOME BUILDERS
COMPANY et al.

SHULMAN, Presiding Judge.

This appeal involves a products liability claim brought by appellants against the manufacturer, Champion Home Builders Company, and the dealer, Irvin P. Wolfe, of a motor home that was completely destroyed when it exploded and burned. Appellants sought damages for personal injury and the loss of personal property and based their claims on theories of strict liability and negligence.

On June 8, 1979, Brad McColl, accompanied by Wolfe, an authorized Champion dealer, purchased a motor home from Champion at its plant in Ellaville, Georgia. McColl sold the motor home to appellant/ Shelley Marrs on June 5, 1980. On October 26, 1980, appellants Owen Dewayne Lodge and Dennis McGuire borrowed the vehicle from Marrs and went to Florida. Early one morning, the heating system apparently malfunctioned resulting in a fire that injured Lodge and McGuire and totally destroyed the motor home. Lodge and McGuire sought damages for their personal injuries, and Marrs sought damages for the value of his lost property. Appellees' motion for summary judgment was granted by the trial court on both counts, and this appeal followed.

1. Appellants argue that the trial court failed to consider the entire record before granting appellees' motion for summary judgment because appellees' answer to appellants' interrogatories, though mailed to appellants' counsel, were not filed with the trial court. However, OCGA § 9-11-29.1 states that discovery materials need not be filed except under certain specified circumstances. There is no evidence in the record that any of these circumstances existed in the present case. Therefore, this enumeration is without merit.

2. It is well settled that a dealer cannot be held strictly liable for injuries caused by a defective product he sold. *Ellis v. Rich's, Inc.*, 233 Ga. 573, 577 (212 SE2d 373). Accordingly, the trial court correctly granted Wolfe's motion for summary judgment on the strict liability count.

3. In regard to the strict liability claim against Champion, "[t]he burden is on the party who moves for summary judgment to produce evidence which conclusively negates the essential elements entitling

the respondent to recover under any theory that may be drawn fairly from the pleadings and the evidence. [Cits.]" *Fort v. Boone*, 166 Ga. App. 290, 291 (304 SE2d 465). Appellants claim that the trial court erred in granting summary judgment because Champion failed to carry this burden. One fact appellants must prove in order to establish Champion's strict liability is that the motor home was defective *when sold* by the manufacturer and, if so, that this defect was the proximate cause of the injuries sustained. *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 703 (294 SE2d 541). OCGA § 51-1-11 (b)(1).

Appellants' expert witness testified that it was his opinion that the fire was started by a leak in the gas system of the motor home and that the existence of this leak was due to appellees' failure to properly inspect the vehicle before it was sold. However, when asked whether his opinion would change if the gas system had been used without incident 10 to 12 times before the time in question, he replied that if that were the case he would have to "look for some other reason [than negligence] for it leaking." McColl, the original owner of the motor home, stated in a signed affidavit that he had used the gas system approximately 15 times before he sold the vehicle to appellant and that the system had worked properly each time. Marrs attempted to rebut this testimony by claiming that McColl had never specifically told him that he had used the gas system and that Marrs had assumed the system had not been used because the controls did not appear to have been touched. Additionally, appellees introduced into evidence the inspection sheet, signed by Wolfe and dated the day the motor home was sold to McColl, which showed that the gas system had been inspected and was found to be in proper working condition. No other evidence was offered by appellants. In light of the evidence presented by appellees, we believe that the "non-opinion" expressed by appellants' expert witness and Marrs' assertion that McColl had simply not mentioned that he had used the motor home's gas system are not enough to establish that the condition that caused the fire existed when it was sold by Champion. Therefore, we hold that Champion sufficiently pierced the pleadings so as to authorize the trial court's finding that no genuine issue of fact remained in regard to the strict liability against it.

Furthermore, after considering the foregoing evidence, we believe that no material issue of fact remains in regard to either appellee's alleged negligence. The theory of res ipsa loquitur has no application in the present case because the fire was not necessarily of such an unusual or extraordinary nature that would not ordinarily occur in the absence of someone's negligence. Also, the motor home had been out of appellees' exclusive control for over a year. *Hall v. Chastain*, 246 Ga. 782 (1) (273 SE2d 12). See *Darlington Corp. v. Finch*, 113 Ga. App. 825, 827 (149 SE2d 861).

4. Since we have ruled that summary judgment was appropriately granted in the case at bar, we need not consider whether or not Marrs could have recovered his economic loss incurred pursuant to the destruction of his motor home.

*Judgment affirmed. Quillian, P. J., Banke, Birdsong and Sognier, JJ., concur. McMurray, C. J., Deen, P. J., Carley and Pope, JJ., dissent.*

DECIDED JANUARY 31, 1984 —
REHEARING DENIED FEBRUARY 28, 1984 —

*J. Wayne Parrish*, for appellants.
*William A. Erwin, Kenneth B. Hodges, Jr., William E. Cannon, Jr.*, for appellee.

McMURRAY, Chief Judge, dissenting.

On or about June 8, 1979, Brad McColl purchased a motor home (recreational vehicle) by and through Irvin P. Wolfe (doing business as Wolfe Motor Company and/or Irv Wolfe Dodge, Inc.) from the manufacturer, Champion Home Builders Company. The records maintained by the manufacturer show an inspection of a particular vehicle (#2227) by one of its inspectors, dated "6-8-79." A dealer's pre-delivery inspection form is also required by the manufacturer. It has in its files such inspection form, dated "6-8-79," with the signature "Irvin P. Wolfe." However, the form states it was filled in on "6-9-79." Apparently (by deduction) this pre-delivery inspection was in conformity to the sale to Brad McColl as shown on the form. According to the form the LP gas system was inspected "and/or actually tested by . . . Dealer and . . . was found to perform, function, operate and/or serve exactly as intended, by its respective manufacturer, prior to delivery to the above Retail Purchaser." But Irvin P. Wolfe has not testified he carried out this inspection on this particular vehicle, nor has the manufacturer's inspector testified she made such inspection of the vehicle purchased by McColl. The form itself designates the type of testing of the gas system that was supposedly made.

Approximately one year later (on or about June 5, 1980) McColl sold the motor home to Shelley Marrs. On or about October 26, 1980, Owen Dewayne Lodge and Dennis McGuire were occupying the motor home borrowed from Shelley Marrs, and while Lodge and McGuire were traveling in Florida in the motor home, the heating system apparently malfunctioned, resulting in a fire creating the injuries and destruction of the mobile home involved in this litigation.

As a result these plaintiffs sued the dealer and the manufacturer.

The defendants have moved for summary judgment based upon the affidavit of the manager of the division of Champion Home Builders Company who deposed that he was thoroughly familiar with the procedures employed by it in manufacturing mobile homes and recreational vehicles. He testified as to the method of examining and testing the LP gas system (incidentally, the same for any gas equipment) following the filling of the tank with LP gas, including the lighting of the furnace which is allowed to run until, in response to the increased heat, it shuts off by the thermostat. He further deposed that the test performed on the unit purchased by McColl was performed by a certain Champion inspector attaching the copy of an inspection report with her (inspector) name on it and that her inspection report (as attached) indicates that the LP system was functioning properly on June 8, 1979. He also deposed that Champion required its dealers to make a complete inspection of the unit before it is delivered to the buyer, attaching a true copy of the dealer's (Wolfe's) pre-delivery inspection report (dated "6-9-79" as the date the form was filled in) and as signed by the dealer on "6-8-79." The Champion inspector's report shows a check mark by (among other things) "LP Tank/Leak Detection," also "Furnace," but does not denote what vehicle was inspected. A date is also shown on this form as "6-8-79" with many, many items shown thereon as needing correction but not as to the gas system. Incidentally, the inspection report does not indicate that the LP system was functioning properly on June 8, 1979, but merely a check mark shows some type of inspection.

In further support of the motion for summary judgment McColl's affidavit is offered and refers to the fact that Wolfe was merely present with him "to use his [Wolfe's] name as an authorized Champion dealer" and he (McColl) purchased the mobile home and drove it directly off the factory grounds. He also deposed that he did not rely on and was not aware of any inspection or lack of inspection of the LP gas system in the motor home by either the dealer or the manufacturer. He further deposed that he had no trouble with the gas system during the time he owned it and "used the furnace and LP gas system at least fifteen . . . times" during the period he owned it. His affidavit also referred to the fact that when he sold it to Marrs it was in good working condition and that he had always operated the furnace during the one year period he owned it in accordance with the warnings and instructions supplied with the motor home and had no problems with it whatsoever.

In opposition to the motion for summary judgment the plaintiffs offered the deposition of an expert who, in response to the question "If this heater had been tested, properly tested at the factory, and it worked fine, would that change or could that change your opinion," replied, "No. The actual happenings here show that that heater was

not properly tested. It was leaking." He was then asked if the heater had been used 10 or 12 times and had been tested before it left the factory would that change his entire opinion. The witness replied, "No, it would not. You can't show me that it was properly tested. I know that it was not properly tested." He further testified that the incident itself was "the result of a leak." He then testified that if the heater had been used 10 to 12 times before the explosion his opinion would be changed and he would have to look "for some other reason for it leaking." The owner also testified that when he purchased it from McColl, McColl did not say to him he had used the furnace and it appeared that it had not been used because the stainless steel parts had not turned a darker brown as they do when subjected to the gas flames.

First of all, the majority affirmed the dismissal of the dealer on summary judgment holding, "a dealer cannot be held strictly liable for injuries caused by a defective product he sold," citing *Ellis v. Rich's, Inc.*, 233 Ga. 573, 577 (212 SE2d 373). To this part of the opinion and judgment of affirmance I agree.

In Division 3, however, as to the strict liability claim against Champion, the manufacturer, the majority points out that one fact the plaintiffs must show in order to establish the manufacturer's strict liability is that the motor home was defective when sold by the manufacturer and, if so, that this defect was the proximate cause of the injuries sustained, citing OCGA § 51-1-11 (b) (1) and *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 703 (294 SE2d 541). At the trial of this case this will certainly be true. The majority interprets the testimony of the expert that it was his opinion the fire was started by a leak in the gas system and that the existence of this leak was due to the defendant's failure to properly inspect the vehicle before it was sold and calls attention to the testimony of the expert that if the gas system had been used without incident 10 or 12 times before the time in question he would have to "look for some other reason for it leaking." The majority here seeks to infer that this testimony of the expert refuted his earlier testimony, that is, if the heater had been properly tested and it worked fine he would change his opinion. But the testimony by the expert was that he would not change his opinion and that the actual happenings (the explosion) show that the heater was not properly tested and "it was leaking," and that he had not been shown that it was properly tested. I disagree with the above inference taken from the testimony of the expert as drawn by the majority. The majority then states that the purchaser, Marrs, had assumed the system had not been used because the controls did not appear to have been touched. My view of the testimony of the plaintiff purchaser is different from the majority's view. His testimony was that the furnace appeared not to have been used as "stainless [steel]

starts turning a darker brown-like color," that is, "after you light them up, and use them for awhile" and he "couldn't tell the difference between that one [mobile home] and the ones that they had on the lot down there to sell." The majority then refers to the inspection sheet of the dealer that it "showed that the gas system had been inspected and was found to be in proper working condition." My view of the inspection sheet is different from that of the majority relating to the dealer who did not testify. The inspection form attached to an affidavit found in the manufacturer's records merely shows that the dealer named, or someone for him, signed the form (it having a signature thereon) with a check mark that the gas appliances were connected, the unit's gas piping was pressure tested with all appliance-burner valves closed, the entire system pressurized and the appliance connections were tested for leakage with soapy water or bubble solution among other things. In addition this form states it was made out "6-9-79" although allegedly signed by Irvin P. Wolfe "6-8-79." The plant manager, in his affidavit, merely testified that an inspection by the dealer is required and attached a true copy of a dealer's pre-delivery inspection report with a signature of Wolfe. But no one testified the dealer signed and inspected the vehicle. Affiant does not testify that Wolfe made the inspection even though he signs a statement that all of the pre-delivery inspection requirements had been performed. I cannot agree that the manufacturer has pierced the pleadings so as to authorize the trial court's finding that no genuine issue of material fact remained as to strict liability against it.

Furthermore, I do not agree that the theory of res ipsa loquitur has no application in the present case as to negligence with reference to the explosion in the gas system, that is, that fire is not necessarily of such an unusual or extraordinary nature that would not ordinarily occur in the absence of someone's negligence.

I, therefore, respectfully dissent. I am authorized to state that Presiding Judge Deen joins in this dissent.