### 68528. RHODES v. R. G. INDUSTRIES, INC. et al.
(325 SE2d 465)

BENHAM, Judge.

On February 1, 1980, Mrs. Mattie Hogan purchased a new .22 caliber double-action revolver from appellee Arvin's Gun Shop ("Arvin's"). The gun was manufactured by appellee R. G. Industries, Inc. ("R. G.") from parts supplied by appellee Rohm Gescellschaft ("Rohm"). Mrs. Hogan bought the gun for self-protection and kept it in a concealed location in her home, which she shared with other members of her family, five of whom were children under five years of age.

On May 5, 1981, several adults and children were visiting the Hogan home, including Mrs. Hogan's 5-year-old nephew, her 3-year-old niece, and a 10-year-old girl, Kimberly Rhodes. During the course of the day, the nephew found the revolver under a chifforobe, cocked the hammer and put the gun in the basket of a bicycle in Mrs. Hogan's daughter's room. The niece later found the gun in the basket, removed it, held it by the grip with both hands, pulled the trigger and fired one bullet, which struck and killed Kimberly, who was seated on a sofa in the living room.

Appellant, the decedent's mother, filed a wrongful death action against the parts supplier, manufacturer and seller of the gun on behalf of decedent's estate and herself. She alleged, inter alia, that Arvin's was liable for breach of implied warranty of merchantability, i.e., that the gun was not fit for the purpose of self-protection and that R. G. and Rohm were strictly liable because the gun was unreasonably dangerous as designed and marketed to the general public.

Appellees moved for dismissal of the action, the trial court converted the motions to motions for summary judgment and, after reviewing the evidence and arguments presented, granted the motions. Appellant seeks a reversal of the judgment, raising seven enumera-

tions of error. We affirm.

1. Appellant first contends that "the trial court erred in holding as a matter of law that handguns are exempt from Georgia's product liability law because the lack of safety connected with such weapons raises a political, nonjusticiable question." Her last contention is that the trial court erroneously held as a matter of law that the R. G. revolver is not unreasonably dangerous when marketed to the general public. We disagree on both points. The Second Amendment to the U. S. Constitution guarantees the right of the people to keep and bear arms, as does Art. I, Sec. I, Par. VIII of the Georgia Constitution of 1983, which states that that right "shall not be infringed, but the General Assembly shall have the power to prescribe the manner in which arms may be borne." In accordance with that edict, the General Assembly has created a regulatory scheme for the distribution and use of firearms. "What is important here is the fact that the [Georgia] legislature has neither enacted a statute banning the sale of handguns to the general public nor adopted a joint resolution to amend the Constitution to that effect." *Richman v. Charter Arms. Corp.*, 571 FSupp. 192, 198 (E.D. La. 1983). The enactment of comprehensive licensing provisions for suppliers and purchasers of handguns is indicia that the legislature is not inclined to ban the use of such weapons, and that legislators do not feel that the marketing of handguns to the public is an unreasonably dangerous or socially unacceptable activity. *Mavilia v. Stoeger Indus.*, 574 FSupp. 107 (Mass. 1983). We must conclude that the General Assembly does not intend to control further the manufacture, distribution or use of handguns. This court is prohibited from altering the status quo since the legislature's present position is within constitutional limits. We cannot change laws, we can only interpret them. *State Bar of Ga. v. Haas*, 133 Ga. App. 311 (2) (211 SE2d 161) (1974). While we recognize with regret the numerous deaths caused by firearms, we are powerless to remedy the situation without a clear legislative mandate.

2. The trial court did not err when it ruled as a matter of law that R. G. had not manufactured a defective product and that the gun was fit for its intended purpose. Appellant asserts that R. G. is strictly liable in tort under OCGA § 51-1-11 (b) (1) inasmuch as the gun "was not merchantable and reasonably suited to the uses intended . . ." However, the evidence showed that the gun performed exactly as was expected: when the hammer was cocked and the trigger was pulled, it fired. Mrs. Hogan testified in her deposition that she fired the gun several times before the accident and it never malfunctioned, and that on at least one occasion she fired it to ward off an intruder in her home. There was also deposition testimony from two of R. G.'s employees that the gun had no defects. The weapon clearly satisfied the purpose for which it was manufactured and purchased,

and there was no evidence that the weapon was defective. In *Jones v. Cranman's Sporting Goods*, 142 Ga. App. 838 (237 SE2d 402) (1977), we held that the fact that a rifle exploded during loading was evidence that it was unfit for the ordinary purpose for which it was intended. Conversely, the fact that the revolver in this case fired when the hammer was cocked and the trigger was pulled was evidence that the weapon was fit for the use intended. The finding of fitness as a matter of law was adequately supported by the evidence.

Appellant further argues that the weapon should have been equipped with a safety device that would have prevented a 3-year-old child from discharging it. There is no statutory requirement or evidence of an industry-wide practice that handgun manufacturers equip their product with safety devices, and this court is not in a position to impose such a requirement. Nor can it be said that "but for" the absence of a safety device the tragedy would not have occurred. The manufacturer did include specific cautionary information regarding the storage and use of the gun, including the warning to store guns and ammunition separately and out of the reach of children. The owner of the gun admitted that she did not read the warnings and instructions given and that she knew handguns were dangerous, and characterized her failure to take precautionary measures as "just one of those things." The evidence also showed that had the hammer not been cocked by the 5-year-old child, the younger child would not have been strong enough to pull the trigger and fire the revolver. Under those circumstances we cannot say that the presence of a safety device would have saved the life of the decedent. "A manufacturer or a seller does not have the status of an insurer as respects products design . . . To impose [such a duty] may be a desirable aim, but no such obligation has been — or, in our view, may be — imposed by judicial decision. [Cit.]" *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44 (4) (248 SE2d 15) (1978).

Appellees met their burden to establish that no defect existed in the firearm. See *Jones v. Cranman's Sporting Goods*, supra, Division 1. This court, in accordance with the weight of authority, will not hold that a firearm is inherently defective because its firing resulted in the death of an innocent bystander. See *Martin v. Harrington & Richardson, Inc.*, Slip Op. No. 83-2514, U. S. Court of Appeals (7th Cir.); *Mavilia*, supra; *DeRosa v. Remington Arms Co.*, 509 FSupp. 762 (E.D. N.Y. 1981); *Bennet v. Cincinnati Checker Cab*, 353 FSupp. 1206 (E.D. Ky. 1973).

3. The trial court, having ruled correctly that the handgun was not defective, also ruled correctly that the allegedly defective nature of the weapon did not proximately cause decedent's death. OCGA § 51-1-11.

4. Appellant contends that decedent was a third-party beneficiary

of the implied warranty of merchantability between Mrs. Hogan and Arvin's pursuant to OCGA § 11-2-318, and that Arvin's breached the warranty, thus giving rise to appellant's cause of action against the seller. We disagree.

"Merchantability" as defined in OCGA § 11-2-314 (2) (c) means "fit for the ordinary purposes for which such goods are used." As discussed in Division 2 of this opinion, the evidence showed that the gun was of merchantable quality. " '[A] defective condition obtains *only* when "the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer." ' " *Hunt*, supra, Division 2. Since OCGA § 11-2-314 establishes a concept for retailers parallel to that of OCGA § 51-1-11 for manufacturers (*Pierce v. Liberty Furn. Co.*, 141 Ga. App. 175 (3) (233 SE2d 33) (1977)), we reach the same result: the warranty was not breached; therefore, no cause of action exists against Arvin's.

5. Again, since there was no breach of implied warranty, the trial court correctly concluded that the alleged breach was not the proximate cause of the child's death. "If the injury results from abnormal handling . . . the seller is not liable." *Hunt*, supra, Division 2.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 26, 1984 —
REHEARING DENIED DECEMBER 13, 1984 — 

*Alice Oppenheim, Randall R. Moore*, for appellant.
*Manley F. Brown, John W. Collier, John C. Edwards, Mallory C. Atkinson, Jr.*, for appellees.