76473. HONDA MOTOR COMPANY, LTD. et al.
v. KIMBREL et al.
(376 SE2d 379)

BEASLEY, Judge.

This appeal followed our grant of interlocutory review from the denial of a motion for partial summary judgment by defendants Honda Motor Company, Ltd., and its subsidiaries (collectively Honda Motors). On October 6, 1984, plaintiff Margaret Kimbrel was driving a 1981 Honda Accord accompanied by her daughter Tammy as a front seat passenger. Tammy was asleep with her seat reclined. While proceeding east on Highway 26 in a heavy fog at approximately 45 m.p.h., the Honda Accord collided with the rear of a Chevrolet pick-up truck being operated by Robert L. Jones at approximately 12 m.p.h. Margaret testified that one could see ahead "probably ten feet" and there were no taillights on the pick-up prior to impact. Margaret sustained serious injuries and Tammy's were extremely serious. The plaintiffs, including Tammy's father Kenneth, who brought derivative claims, filed an action against Jones and the automobile manufacturer, Honda Motors. The amended complaint alleged that the Honda Accord was defective because it was not equipped with "passive occupant protection," which rendered the vehicle unreasonably dangerous to its occupants.

The Honda Accord had been purchased "used" by Kenneth and was equipped with manual three-point lap and shoulder safety belts with an audible buzzer. Plaintiffs Margaret and Tammy admitted that they were not wearing their safety belts at the time of the wreck and stated it was their custom not to wear them. Margaret testified she was aware of airbags prior to the collision but did not know

whether any of her family's vehicles had airbags; she did not think so. When asked if he was aware that the Honda Accord did not have air bags, Kenneth replied: "It never crossed my mind." He further testified that he was familiar with airbags, but his recollection as to how he had obtained information concerning them was vague, and to the best of his knowledge he had never owned a vehicle with them. Tammy could not remember having heard of airbags prior to the incident. The three plaintiffs had never seen a car so equipped.

Honda Motors moved for partial summary judgment on the claim that the automobile was defective because it was not equipped with airbags or other passive restraints. The grounds were: 1) lack of airbags did not render the vehicle defective under Georgia law because the lack of such devices was obvious and did not prevent the proper functioning of the vehicle; 2) the claim is preempted under federal law which permitted automobile manufacturers the option of three types of occupant restraint systems, one of which, lap and shoulder seat belts, was provided by Honda Motors.

Plaintiffs then filed a second amended complaint which, in effect, superseded the amended complaint. It consisted of eight counts. The first and second counts sought recovery for injuries to Tammy and were prosecuted by Margaret as her guardian. The third count on Margaret's behalf sought recovery for injuries she sustained in the collision. In the fourth and fifth counts, Kenneth sought recovery for Tammy's medical expenses. The sixth and seventh counts were by Kenneth and Margaret for loss of Tammy's services. In the eighth count Kenneth sought to recover for loss of consortium resulting from his wife's injuries.

The first count alleged, as to Tammy, that, by their actions in the design, manufacture, sale and placement of the Honda Accord into the stream of commerce, Honda Motors breached duties of care owed to her as a front seat occupant. It then alleged that Honda Motors knew, or should have known, that reclining seats as incorporated into the design of the Honda Accord rendered the vehicle uncrashworthy and the seat belt system, as designed and installed, was ineffective when the seat was in a reclining position; that the "frontal type" collision was foreseeable by Honda Motors which should have undertaken the duty to protect front seat occupants from the "second collision" impact between the body and interior portions of the vehicle; that Honda Motors had state-of-the-art engineering technology to provide reliable protection in the form of "passive" restraints such as air cushions or airbags and that Honda Motors' failure to furnish adequate occupant protection in any form was a breach of a duty of due care owed to Tammy.

In the second count, the second amended complaint alleged that a defective condition existed in the Honda Accord at the time of its

first sale for use which caused the injuries sustained by Tammy and for which Honda Motors was liable pursuant to OCGA § 51-1-11; that the vehicle was defective and unreasonably dangerous by incorporating into its design a reclining seat, and that it, together with an absence of effective "occupant protection," rendered the vehicle uncrashworthy.

As to Margaret the second amended complaint alleged that Honda Motors by their actions in the design, manufacture, sale and placement into the stream of commerce of the Honda Accord breached duties of care owed to drivers of the vehicle, and in particular, Margaret; that the moderate-speed frontal collision experienced when she was operating the Honda Accord was foreseeable to Honda Motors; that it was also foreseeable that users of such vehicles would not utilize "active" occupant protection in the form of seat belts; that Honda Motors knew a seat belt system is effective only if the occupants are properly positioned and the belt is adjusted in a manner fully known only to Honda Motors; that non-usage of the seat belts was reasonable considering the relative knowledge Margaret had, which lack of knowledge was foreseeable by Honda Motors.

The complaint further alleged that Honda Motors owed Margaret a duty to design a vehicle which was crashworthy and provided occupant protection to users which was not dependent upon the user's knowledge of any effectiveness of the protection nor dependent upon user's adjustment of the "occupant protection." This count also alleged that Honda Motors had the state-of-the-art engineering technology to have incorporated passive restraints in the form of airbags or otherwise to provide protection to vehicle occupants and the failure to do so resulted in the injuries sustained by Margaret.

Plaintiffs offered expert testimony that it was feasible to equip the 1981 Honda with airbags and that the seat belt system was ineffective when the front passenger seat was in a reclining position.

The motion for partial summary judgment was denied by the trial court, which concluded there were material issues of fact to be resolved by a jury but did not specify what those issues were.

1. As stated in their brief, Honda Motors did not move for summary judgment on the new claim regarding reclining seats but confined their motion to the claims regarding lack of airbags or other passive restraints, basically what was set forth in the original and first amendment to the complaint. As reiterated in the first supplemental brief of Honda Motors: "Appellants' motion for partial summary judgment is, of course, limited to the claim of failure to equip the automobile with airbags or other passive restraints. Thus, plaintiffs' allegations and proofs concerning the claim that the reclined seat rendered the seatbelts defective are not in issue on this appeal."

As a result of the expanded basis for liability as to negligence by

defendants regarding Tammy adopted in the second amended complaint, any ruling as to the original allegations would be in the nature of an advisory opinion, as the issues therein are moot. Moreover, because all the counts of the second amended complaint as to Tammy contained allegations which inherently and inextricably involved reclining seats with an alleged defective condition, rendering seat belts ineffective and thus mandating some type of passive restraint, by Honda Motors' concession those counts are not at issue on this appeal. In fact, the only issue remaining concerns Margaret's claim for damages and Kenneth's claim for loss of consortium as to her; for only as to Margaret are the issues solely based on the absence per se of airbags or other passive restraints.

2. Even though it is predicated on negligence rather than strict liability, which was the original cause alleged, the third count of the second amendment tends to track the allegations of the original complaint but provides embellishment insofar as it seeks to anticipate defenses such as assumption of the risk and failure to exercise ordinary care for one's own safety.

The essential issue is whether Honda Motors negligently created a defective condition by not supplying airbags. The parties have argued exhaustively regarding preemption by federal law,[1] but we must first determine if there is *any* right to recover under Georgia law, because preemption results where state law conflicts with or is more stringent than federal law and regulations. *Ray v. Atlantic Richfield Co.*, 435 U. S. 151, 158, 163, 165-6 (98 SC 988, 55 LE2d 179) (1978); *Fidelity Fed. S & L Assn. v. De La Cuesta*, 458 U. S. 141, 152 (102 SC 301, 73 LE2d 664) (1982); *Quaker Oats Co. v. New York*, 295 N. Y. 527, 537 (68 NE2d 593) (1946), and United States Supreme Court cases cited.

"[W]hat duty a defendant owed a plaintiff is . . . a policy problem — a matter of law." *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 512 (317 SE2d 853) (1984). Our public policy as expressed by the legislature evinces a considered posture of laissez-faire regarding occupant protection and restraints. Since 1964 to September 1, 1988, Georgia has required only that two sets of safety belts be furnished for the front seat of an automobile, and even then not necessarily by the manufacturer. OCGA § 40-8-76 (a) (1). Added in 1983, subsection (d) provides: "Violation of this Code section shall not con-

---

[1] "A rule of the common law which permits the recovery of monetary damages for its breach self-evidently sets a standard and has been held to be a form of state regulation subject to the supremacy clause." *Cox v. Baltimore County*, 646 FSupp. 761, 763 (D. Md., 1986), citing *San Diego Unions v. Garmon*, 359 U. S. 236, 247 (79 SC 773, 3 LE2d 775) (1959). See *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U. S. 225 (84 SC 784, 11 LE2d 661) (1964).

See discussion of the preemption doctrine with regard to airbags found in *Cox*, supra. See also 15 USCA § 1392 (d) and § 1397 (c).

stitute negligence per se nor contributory negligence per se." Ga. L. 1983, pp. 1464, 1466. The Vehicle Equipment Safety Compact of 1964 (Ga. L. 1964, p. 463), enacted for the promotion of safety standards and development of safety features, was repealed March 16, 1983 [Ga. L. 1983, p. 691]. This indicates a minimal excursion into the field of vehicle safety regulation involving occupant protection. Thus, from the legislative history emerges a policy of permitting federal regulations to set the minimum standards in that area. This leads to the conclusion that Georgia requirements as expressed by the code are less than the federal.

As interpreted by our courts, a similar result is reached. In a products liability case predicated on negligence, the duty imposed is the traditional one of reasonable care and the manufacturer need not provide, from a design standpoint, a product incapable of producing injury. *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 699 (1) (294 SE2d 541) (1982). Georgia law does not require a manufacturer to occupy the status of an insurer with respect to product design, *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. 44, 46 (4) (248 SE2d 15) (1978), or to provide a collision safe vehicle. *Friend v. Gen. Motors Corp.*, 118 Ga. App. 763, 764 (2) (165 SE2d 734) (1968). The manufacturer is under no obligation to make a machine "accident proof or foolproof," *Fortner v. W. C. Cayne Co.*, 184 Ga. App. 187, 190 (2) (360 SE2d 920) (1987), and *Poppell v. Waters*, 126 Ga. App. 385, 387 (1) (190 SE2d 815) (1972), or even "more safe." *Stovall & Co. v. Tate*, 124 Ga. App. 605, 611 (1) (184 SE2d 834) (1971). The public policy enunciated by the legislature is a predominate factor in our determination. *Rhodes v. R. G. Indus.*, 173 Ga. App. 51, 52 (1) (325 SE2d 465) (1984).

Here the vehicle is not alleged to be defective in the operational sense but in that it did not contain what the plaintiffs contend to be the best or more advanced safety device. The instant situation is inapposite to *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331 (319 SE2d 470) (1984), which involved a defective injury-causing component rather than the absence of a superior safety device. If a "product is designed so that it is reasonably safe for the use intended, the product is not defective even though capable of producing injury where the injury results from an obvious or patent peril." *Coast Catamaran Corp. v. Mann*, 171 Ga. App. 844, 847 (2) (321 SE2d 353) (1984) [affirmed *Mann v. Coast Catamaran Corp.*, 254 Ga. 201 (326 SE2d 436) (1985)], where it was observed that with regards a product-design case "only semantics distinguishes" between a cause of action for negligence and liability under OCGA § 51-1-11. See *Griffin v. Crown Central Petroleum Co.*, 171 Ga. App. 534 (320 SE2d 383) (1984).

In summary, the threshold issue is whether the absence of pas-

sive restraints or airbags can properly be considered a defective condition so as to establish a breach of duty on the part of Honda Motors. *Stodghill v. Fiat-Allis Constr. Machinery*, 163 Ga. App. 811, 813 (295 SE2d 183) (1982). The answer is no. *Stovall & Co.*, supra; *Poppell*, supra; *Hunt*, supra; *Greenway*, supra; *Stodghill*, supra; *Coast Catamaran Corp.*, supra; *Trailmobile, Inc. v. Smith*, 181 Ga. App. 134 (351 SE2d 528) (1986); *Orkin Exterminating Co. v. Dawn Food Prods.*, 186 Ga. App. 201 (3) (366 SE2d 792) (1988).

Because the Georgia standard of duty does not exceed the federal, Georgia would mandate only that federal standards be met. See Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1981). When the case law and statutory pattern are combined the result is that recovery for negligent product design could not be had against the manufacturer of a vehicle in compliance with federal regulations as to safety restraints. See *Russell v. Cynwid Investments*, 142 Ga. App. 410 (236 SE2d 147) (1977); *Baird v. Gen. Motors Corp.*, 654 FSupp. 28 (N.D. Ohio, 1986). In these circumstances there would be no basis for requiring a manufacturer to furnish passive restraints or airbags in lieu of safety belts and a jury would not be authorized to find any breach of duty in the failure to supply them to a consumer.

3. Insofar as the third count of the second amendment to the complaint might encompass the characteristics of an action for strict liability under OCGA § 51-1-11, there is no basis for recovery. "The term 'not merchantable and reasonably suited to the use intended' as used in this statute means 'defective.' . . . The existence of a defect is crucial, because a manufacturer is not an insurer against all risks of injury associated with its product." *Giordano v. Ford Motor Co.*, 165 Ga. App. 644, 645 (2) (299 SE2d 897) (1983). Accord *Center Chem. Co. v. Parzini*, 234 Ga. 868, 869 (2) (218 SE2d 580) (1975); *Westinghouse Elec. Corp. v. Williams*, 173 Ga. App. 118, 122 (3) (325 SE2d 460) (1984) [physical precedent]. Safety belts rather than airbags would not be a defect within the meaning of the code section. *Poppell*, supra; *Hunt*, supra; *Talley v. City Tank Corp.*, 158 Ga. App. 130 (279 SE2d 264) (1981); *Trailmobile*, supra; *Barnes v. Harley-Davidson Motor Co.*, 182 Ga. App. 778 (357 SE2d 127) (1987).

Neither Margaret nor Kenneth, whose eighth count claim is derivative, are entitled to recover from Honda Motors based upon the allegations of the second amended complaint. It was error to deny summary judgment on this issue and the trial court is directed to grant the motion of Honda Motors on counts three and eight.

*Judgment affirmed in part and reversed in part with direction. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED NOVEMBER 7, 1988 —
REHEARINGS DENIED NOVEMBER 30, 1988.

*Dickey, Whelchel, Brown & Readdick, Richard A. Brown, Jr.,
John E. Bumgartner*, for appellants.
*Mundy & Gammage, Gerry E. Holmes, Harris, Watkins, David
& Chambless, Joseph H. Chambless, Mary M. Katz*, for appellees.