A93A1303. ICI AMERICAS, INC. v. BANKS et al.
(440 SE2d 38)

ANDREWS, Judge.

This products liability action arose from the death of a nine-year-old child, who died after consuming a rat poison product manufactured by ICI Americas, Inc. (ICI). ICI manufactured a rat poison called Talon-G, which was registered by the Environmental Protection Agency (EPA) under the Federal Insecticide, Fungicide and Rodenticide Act, 7 USC § 136-136y (FIFRA). As part of the FIFRA packaging and labeling requirements, Talon-G was packaged in a container with EPA-approved labeling, which displayed warnings cautioning users that it should be kept out of reach of children; that it may be harmful or fatal if swallowed, and that it be stored in its original container in a location inaccessible to children. ICI sold Talon-G only to professional pest control operators. The plaintiffs, the child's parents, produced evidence that a pest control company servicing the Boys Club placed the Talon-G in an unmarked, unlabeled container stored in an unlocked cabinet at the Boys Club. The poison was apparently found in the container at the Boys Club by the child, who consumed a quantity of it.

After the pest control company and the Boys Club settled claims against them, the plaintiffs proceeded to trial against ICI on negligence and strict liability theories claiming Talon-G was negligently or defectively designed such that it was unreasonably dangerous to children, and that it was inadequately labeled. There was evidence that the danger the rat poison would be misused by being consumed by children was foreseeable to ICI, and that ICI withheld data from the EPA on instances of human exposure to the product. Other evidence

showed that the danger could have been reduced, and the product made safer by the addition of ingredients which would cause humans, but not rats, to reject it as bitter tasting, or vomit after ingesting it. The jury found for the plaintiffs and awarded $510,000 in compensatory damages and $1,000,000 in punitive damages. Because plaintiffs had already received more than $510,000 in compensatory damages in their settlement with the other defendants, their actual recovery from ICI was reduced to the $1,000,000 awarded as punitive damages.

1. ICI contends the trial court erred in denying its motion for a directed verdict because plaintiffs failed to prove that its product was defective or that it was negligent. "In the subject product-design case, only semantics distinguishes the cause of action for negligence and a cause of action pursuant to OCGA § 51-1-11 [claiming strict liability for defective design]." *Coast Catamaran Corp. v. Mann,* 171 Ga. App. 844, 848 (321 SE2d 350), aff'd 254 Ga. 201, 202 (326 SE2d 436) (1985). In both causes of action the manufacturer's conduct is judged by the traditional duty of reasonable care. Id.; *Honda Motor Co., Ltd. v. Kimbrel,* 189 Ga. App. 414, 418 (376 SE2d 379) (1988); *Hunt v. Harley-Davidson Motor Co.,* 147 Ga. App. 44 (248 SE2d 15) (1978); *Weatherby v. Honda Motor Co., Ltd.,* 195 Ga. App. 169, 171 (393 SE2d 64) (1990); *Vax v. Albany Lawn & Garden Center,* 209 Ga. App. 371 (433 SE2d 364) (1993).

Rat poison is a useful rodent control product, which as designed and manufactured for the purpose of being eaten by rats is obviously a poisonous substance designed to kill rats. Because of its poisonous character, it may also harm or kill human beings who eat it. The poisonous character of rat poison is an inherent characteristic necessary to the usefulness of the product as a rat killer. The product is not defectively or negligently designed simply because it is poisonous, nor solely because it may be possible for the manufacturer to make the product safer by reducing the danger resulting from its poisonous character. *Center Chemical Co. v. Parzini,* 234 Ga. 868, 870 (218 SE2d 580) (1975); *Weatherby,* supra. "[OCGA § 51-1-11] imposes strict liability for defective products. It does not attach the condition that the defective product must be 'unreasonably dangerous' which limitation is included in the classic definition of strict liability. We can not read this into the statute. Strict liability is not imposed under the statute merely because a product may be dangerous. Many products can not be made completely safe for use and some can not be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they can not be said to be defective. To hold otherwise would discourage the marketing of many products because some danger attended their use. We find nothing in [OCGA § 51-1-11] that makes a manufacturer strictly lia-

ble for such products absent a defect." *Center Chemical Co.*, supra at 870 (question was whether industrial drain cleaner containing almost pure sulfuric acid was defective). "In a products liability case predicated on negligence, the duty imposed is the traditional one of reasonable care and the manufacturer need not provide, from a design standpoint, a product incapable of producing injury. Georgia law does not require a manufacturer to occupy the status of an insurer with respect to product design. . . . The manufacturer is under no obligation to make a [product] accident proof or foolproof, or even more safe. The public policy enunciated by the legislature is a predominant factor in our determination." (Citations and punctuation omitted.) *Weatherby*, supra at 170.

"Generally, [i]f a manufacturer does everything necessary to make the [product] function properly for the purpose for which it is designed, if the [product] is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands." (Citations and punctuation omitted.) *Poppell v. Waters*, 126 Ga. App. 385, 387 (190 SE2d 815) (1972); *Hunt*, supra at 46. "[I]f the product is designed so that it is reasonably safe for the use intended, the product is not defective even though capable of producing injury where the injury results from an obvious or patent peril." *Coast Catamaran*, supra at 847. Moreover, in Georgia under the "open and obvious" or "patent danger" rule a product is not defectively designed if the absence of a safety device is open and obvious, and there is no duty to warn of an obvious danger or one generally known. *Ream Tool Co. v. Newton*, 209 Ga. App. 228-229 (433 SE2d 67) (1993). Under the "open and obvious" rule "[a]ctual knowledge by the user of the danger posed by a product is *not* necessary. . . . [Rather, in deciding] whether the peril from which an injury results is latent or patent, the decision is made on the basis of an objective view of the product, and the subjective perceptions of the user or injured party are irrelevant." (Emphasis in original.) *Weatherby*, supra at 171-172. The manufacturer is generally not liable for injury resulting from an abnormal use of the product, unless the particular unintended use was foreseeably probable. *Mann v. Coast Catamaran Corp.*, 254 Ga. 201, 202 (326 SE2d 436) (1985); *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (319 SE2d 470) (1984). However, "if in the normal functioning of a product as designed such functioning creates a danger or peril that is not [objectively] known to the user or bystander, then the manufacturer is liable for injuries proximately caused by such danger. Thus, the manufacturer of a product which, to its actual or constructive knowledge, involves danger to users has a duty to give warning of such danger." (Citations and punctuation omitted.) *Ford Motor Co.*, supra at 335. "A duty to warn of danger in the use of a product extends only to the

use of the product in the manner reasonably contemplated and anticipated by the manufacturer. When the use to which the product was being put at the time of injury is not that originally intended by the manufacturer, the determination of whether strict liability may be asserted as a viable theory of recovery or whether the manufacturer is insulated from liability because the use of the product was 'abnormal' and intervening depends, initially, upon the foreseeability that the product would be put to that use." *Talley v. City Tank Corp.*, 158 Ga. App. 130, 137 (279 SE2d 264) (1981). Foreseeability in this context means that which would be foreseeably probable or objectively reasonable to expect, not merely what might occur. *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 704 (294 SE2d 541) (1982); *Ford Motor Co.*, supra at 335.

From the foregoing principles it may be gathered that, where a product in its normal functioning, as designed, creates a latent danger, arising from a foreseeably probable unintended use, and the user or injured party could not from an objective point of view appreciate the latent danger, the manufacturer may be held liable on a claim of defective or negligent design for failing to adequately warn of the foreseeable danger. *Ford Motor Co.*, supra; *Poppell*, supra; *Center Chemical Co.*, supra; see *Mann v. Coast Catamaran*, supra. In the present case, evidence showed that the product performed as intended as an effective rat killing poison. However, the facts were sufficient for a jury to conclude that in the normal use of Talon-G as a rat poison, the product, as designed, created a latent danger that it would be consumed by children, which danger could not be appreciated by children who mistook it as food, and that this dangerous unintended use was foreseeably probable to ICI. Compare *Weatherby*, supra at 173, 176 (discussing "open and obvious" versus latent danger as applied to the objective appreciation of such danger by an injured child); *Greenway v. Peabody Intl. Corp.*, supra (not reasonably foreseeable to manufacturer that child killed when trapped between dumpster doors would play inside dumpster).

This analysis makes clear that under Georgia law, whether ICI may be liable under the negligence and strict liability claims made by plaintiffs depends on whether it gave adequate warning of the foreseeable danger. Evidence of a foreseeable latent danger, combined with other evidence that ICI could have made the product safer by reducing the danger of misuse by children, was not alone sufficient to support a finding that the product was defectively or negligently designed. There is no requirement imposed by statute or common law that would support the claim that Talon-G was defectively or negligently designed solely because ICI did not make the product safer, or attempt to incorporate the safety features in evidence. There is no evidence that the product, as designed, failed to comply with any spe-

cific federal or state standard. " 'To impose upon a manufacturer the duty of producing an accident-proof product may be a desirable aim, but no such obligation has been — or, in our view, may be — imposed by judicial decision.' " *Hunt,* supra at 47; *Rhodes v. R. G. Indus.,* 173 Ga. App. 51, 53 (325 SE2d 465) (1984) (revolver not defective for lack of safety device that would have prevented three-year-old child from discharging it).

2. Although plaintiffs presented expert testimony that the warnings given by ICI on the labeling of the product were inadequate, the labeling and warning claims should not have gone to the jury because these issues were preempted by FIFRA. Labeling of rodenticides is governed by FIFRA, which provides that a state "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 USC § 136v (b). "To the extent that the [plaintiffs'] claims require a showing that [ICI's] labeling or packaging should have included additional, or more clearly stated, warnings, those claims are pre-empted [by FIFRA]." (Citations and punctuation omitted.) *Papas v. Upjohn Co.,* 985 F2d 516, 518 (11th Cir. 1993). Even claims that warnings other than those on labeling or packaging were not given is pre-empted by FIFRA. "[A]ny claim that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging. If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends." Id. at 519. The plaintiffs' claims that in obtaining an EPA-approved label and packaging, ICI failed to disclose data regarding incidents of human exposure to Talon-G, may subject ICI to FIFRA penalties for misbranding (see 7 USC § 136j (a) (1) (E)), but whether the approved labeling is inaccurate or incomplete, and if so what changes should be made is a matter for determination by the EPA, not a state court. Id. at 519.

The plaintiffs' product design claims are ultimately grounded in the issue of adequate warning, and the warning issue is pre-empted by federal law under FIFRA. Since it is undisputed that the product at issue carried EPA-approved FIFRA warnings, ICI was entitled to a directed verdict.

3. In light of our conclusions in Divisions 1 and 2, we need not address ICI's additional enumerations of error.

*Judgment reversed. Birdsong, P. J., Beasley, P. J., Johnson and Smith, JJ., concur. Pope, C. J., McMurray, P. J., Cooper and Blackburn, JJ., dissent.*

POPE, Chief Judge, dissenting.

Plaintiffs' nine-year-old son, Marlo, discovered some rat poison pellets in a container behind a counter at a Boys Club and thought they were candy. The poison, an anticoagulant that kills by thinning the blood and breaking down the walls of the blood vessels, was slow acting by design. Marlo showed no symptoms until four days later, when his nose began to bleed. After several more days, Marlo's condition continued to worsen and he was put in the hospital for blood transfusions. By the time the doctors discovered that Marlo had ingested rat poison, it was too late for the antidote to work.

Although it was foreseeable that the rat poison would be consumed by children who mistook it for candy, ICI failed to add an emetic or an aversive agent to the product. Plaintiffs produced expert testimony that an emetic will cause any human who ingests the poison to immediately vomit, thereby expelling the poison, but will not have the same effect on rats because they do not have a vomit reflex. They also submitted expert evidence that the aversive agent Bitrex would make the poison taste bad to children but would not keep rats from eating it; that Bitrex was in use in a variety of products as early as the late 1970s; and that there was no reason ICI could not have begun testing its use in rat poison at that time. Viewing this evidence in a light most favorable to plaintiffs (this appeal is from a jury verdict for plaintiffs), a jury could find that ICI's failure to add an emetic or aversive agent was unreasonable.

The majority nonetheless holds that ICI cannot be liable because its product had an adequate warning label, citing *Center Chemical Co. v. Parzini*, 234 Ga. 868, 870 (218 SE2d 580) (1975) for the proposition that a product need not be perfectly safe as long as it is packaged with an adequate warning label. However, there was no evidence in *Center Chemical* that the product in question could have reasonably been made safer. In this case, on the other hand, a jury could (and did) find that the product could have been made safer, without losing its effectiveness, if defendant had taken reasonable steps to do so. *Center Chemical* holds that a manufacturer should not be liable for producing a necessarily dangerous but useful product as long as the product is packaged with an adequate warning label; it does not hold that a manufacturer who can take reasonable steps to make its dangerous product safer can avoid liability by instead placing a warning label on its package. Thus, while I agree that plaintiff's inadequate labeling claim is pre-empted,[1] I would hold that ICI's di-

---

[1] Based on the portion of FIFRA quoted by the majority, at least four federal circuits have ruled that where a defendant's label has been approved by the EPA, the federal agency charged with responsibility for administering FIFRA, state law tort claims alleging inadequate labeling are pre-empted because they require the plaintiff to show that the defendant

rected verdict motion was properly denied with respect to plaintiffs' claims based on design defect and negligence.

I am authorized to state that Presiding Judge McMurray, Judge Cooper and Judge Blackburn join in this dissent.

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 20, 1993 — 

*Rogers & Hardin, Phillip S. McKinney, Susan D. Burnell, Schweber, Izenson & Anderson, Barry L. Anderson, Hagler, Hyles & Adams, M. Stephen Hyles*, for appellant.

*Richard A. Childs, Webb, Carlock, Copeland, Semler & Stair, Wade K. Copeland, Kelly, Denney, Pease & Allison, Ray L. Allison, Doffermyre, Shields, Canfield & Knowles, Robert E. Shields*, for appellees.

---

failed to meet a standard "in addition to or different from" FIFRA requirements. See *King v. E. I. DuPont de Nemours & Co.*, 996 F2d 1346 (1st Cir. 1993); *Shaw v. Dow Brands*, 994 F2d 364 (7th Cir. 1993); *Papas v. Upjohn Co.*, 985 F2d 516 (11th Cir. 1993); *Arkansas-Platte &c. v. Van Waters &c.*, 959 F2d 158 (10th Cir. 1992), adhered to at 981 F2d 1177 (10th Cir. 1993) upon reconsideration in light of *Cipollone v. Liggett Group*, 505 U. S. ___ (112 SC 2608, 120 LE2d 407) (1992). Accord *Hopkins v. CIBA-Geigy Corp.*, 432 SE2d 142 (N. C. Ct. App. 1993). Moreover, our Supreme Court has held that almost identical language in another statute clearly and expressly pre-empted state law tort claims based on the inadequacy of warning labels on tampons. See *Poloney v. Tambrands, Inc.*, 260 Ga. 850 (412 SE2d 526) (1991).