S96Q1529. DOYLE et al. v. VOLKSWAGENWERK AKTIENGESELLSCHAFT et al.

(481 SE2d 518)

HINES, Justice.

This case is before the Court on a certified question from the United States Court of Appeals for the Eleventh Circuit.[1] *Doyle v. Volkswagenwerk Aktiengelellschaft,* 81 F3d 139 (11th Cir. 1996). The question certified is:

> When an automobile manufacturer sells an automobile to a Georgia citizen and the automobile is in compliance with the National Automobile Safety Act,[2] does Georgia law preclude a personal injury product liability claim?

The answer to this question is no. Georgia common law permits a Georgia citizen to sue an automobile manufacturer despite the manufacturer's compliance with the standards established by the National Automobile Safety Act. As we stated in *Banks v. ICI Americas,[3]* "compliance with industry-wide practices, state of the art, or *federal regulations* does not eliminate conclusively [a manufacturer's] liability for its design of allegedly defective products."

The Eleventh Circuit's question arises from a defective products case brought by Victoria and Duffey Doyle in the United States District Court for the Northern District of Georgia. While Victoria Doyle was driving her new 1989 Volkswagen Jetta on August 18, 1989, she was struck in the rear by another vehicle, and as a result Ms. Doyle sustained severe injuries to her right breast. Ms. Doyle obtained expert opinion that her injuries were caused by the Jetta's shoulder

---

[1] 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9.

[2] The National Traffic and Motor Vehicle Safety Act of 1966. Pub. L. No. 89-563, 80 Stat. 718 (1966) (codified at 15 USC §§ 1381-1431). The current version of the Act is found at 49 USC §§ 30101-30169 (1995) due to a recodification of transportation provisions in the United States Code. In order to be consistent with the federal decisions in this case, the prior codification will be cited.

[3] 264 Ga. 732, 736, n. 6 (450 SE2d 671) (1994). (Emphasis supplied.)

belt and absence of a lap belt, that is, that without a lap belt to absorb a portion of the impact force, a majority of that force was focused on Ms. Doyle's right breast. The Jetta was manufactured by Volkswagenwerk Aktiengesellschaft (Volkswagen AG) and imported and marketed by Volkswagen of America, Inc. (Volkswagen USA). Both the Jetta's driver's seat and front passenger seat were designed and equipped with automatic shoulder belts, but no lap belts.[4] Instead of a lap belt, the Jetta utilized: (1) a torso shoulder belt with automatic locking retractor; (2) an energy absorbing knee bolster; (3) a specially designed anti-submarining seat; and (4) outboard seat belt anchorage. This fully passive restraint system was authorized under Federal Motor Vehicle Safety Standard 208.[5]

The Doyles' complaint set out three theories of liability: negligence, strict liability, and breach of implied warranty of fitness. Both the Doyles and the Volkswagen defendants filed motions for partial summary judgment. Defendants alleged that because the Jetta seat belt system complied with federal motor vehicle safety standards, they were entitled to judgment as a matter of law because either: (1) they had no duty under Georgia law to exceed federal standards; or (2) plaintiffs' common law claims were preempted by the federal standards.

The district court concluded that the Jetta's seat belt system complied with the applicable federal standards despite the absence of a lap belt. The court also concluded that *Honda Motor Co. v. Kimbrel*[6] precluded recovery for negligently creating a defective condition when the vehicle manufacturer is in compliance with federal regulations. Thus, the defendants could not be liable under Georgia law for the absence of a lap belt.[7] Accordingly, the district court denied relief

---

[4] The Doyles allege that upon purchasing the Jetta, Ms. Doyle was told that the design was perfectly safe without a lap belt.

[5] 49 CFR § 571.208 (1987). Standard 208 was first adopted in 1967, and it initially required the installation of manual lap belts in all new automobiles. The standard was amended in 1972 to require a gradual phase-in of passive restraints, i.e., air bags, automatic seat belts, padded interiors, etc. The standard was again amended in 1974 in response to public outcry against ignition/seat belt interlock systems. The 1974 amendment also authorized the National Highway Transportation Safety Administration (NHTSA) to adopt a standard that permitted manufacturers to install either passive restraint systems or manual belt systems. This authorization led to an amended Standard 208 which granted manufacturers the option to install one of three restraint systems: (1) passive restraints for front and lateral crashes; (2) passive restraints for front crashes plus lap belts for side crashes and rollovers; or (3) manual seat belts alone. *Taylor v. General Motors Corp.*, 875 F2d 816 (11th Cir. 1989), cert. denied, 494 U. S. 1065 (110 SC 1781, 108 LE2d 783) (1990). For additional history on Standard 208, see *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U. S. 29, 34-38 (103 SC 2856, 77 LE2d 443) (1983).

[6] 189 Ga. App. 414 (376 SE2d 379) (1988), cert. denied, 189 Ga. App. 912.

[7] Having found plaintiffs' claims precluded under Georgia law, the district court found it unnecessary to reach the preemption issue.

to plaintiffs and granted the defendants' motion for partial summary judgment. The parties then filed a joint statement agreeing that the district court's ruling effectively precluded all of the plaintiffs' claims, and the district court entered judgment for the defendants.

The Eleventh Circuit agreed that the Jetta seat belt system complied with applicable federal standards governing automobile restraints.[8] It was uncertain, however, whether the district court correctly interpreted Georgia law when it relied on *Kimbrel* to preclude the Doyles from pursuing their common-law actions.[9] The Eleventh Circuit certified its question after finding in *Banks v. ICI Americas* "persuasive data" that this Court might render a decision contrary to *Kimbrel*.[10]

The Court of Appeals decision in *Kimbrel* was based on the premise that the Georgia standard of duty with respect to occupant protection and restraints did not exceed Standard 208, and for that reason the absence of passive restraints or airbags could not be considered a defective condition so as to establish a breach of duty on the part of an automobile manufacturer. The Volkswagen defendants argue that *Kimbrel* is not in conflict with this Court's decision in *Banks*, because *Kimbrel* represents only an exception to the *Banks* rule that compliance with federal or industry regulations is not conclusive proof of lack of liability. However, the argument pales in light of the paramount purpose of the Safety Act, that is, to reduce traffic injuries and save lives.[11] Such an "exception" would impede the achievement of that goal because it would permit what has been stated to be only minimum standards,[12] as a matter of law, to represent our state's standard of care. That outcome would "have the per-

---

[8] *Doyle* at 141.

[9] The district court relied on the statement in *Kimbrel*: "Because the Georgia standard of duty does not exceed the federal, Georgia would mandate only that federal standards be met." *Doyle* at 141, citing *Kimbrel* at 419 (2).

[10] *Doyle* at 143.

[11] The Safety Act was passed to ensure the "establishment of safety standards for motor vehicles in interstate commerce [and] to reduce traffic accidents and the deaths, injuries, and property damage which occur in such accidents . . . ." S. Rep. No. 1301, 89th Cong., 2d Sess. 3, reprinted in 1966 U.S.C.C.A.N. 2709, 2710. See also *State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F2d 474, 477 (D.C. Cir. 1986), cert denied, 480 U. S. 951 (107 SC 1616, 94 LE2d 800) (1987). (Congress passed the Safety Act in 1966 in response to escalating injuries and deaths from traffic accidents.)

[12] The Safety Act defines a safety standard as a "*minimum* standard for motor vehicle performance, or motor vehicle equipment performance, which is practicable, which meets the need for motor vehicle safety and which provides objective criteria." (Emphasis supplied.) 15 USC § 1391 (2). The legislative history is also telling. The Senate Conference Report stated that "the Federal *minimum* safety standards need not be interpreted as restricting State common law standards of care, [and] [c]ompliance with such standards would thus not necessarily shield any person from product liability at common law." (Emphasis supplied.) S. Rep. No. 1301, 89th Cong., 2d Sess. 12, reprinted in U.S.C.C.A.N. 2709, 2720.

verse effect of granting complete immunity from design defect liability to an entire industry. . . ."[13]

The *Kimbrel* doctrine predated our decision in *Banks* and is inconsistent with a risk-utility analysis.[14] Under the risk-utility test, compliance with federal standards or regulations is a factor for the jury to consider in deciding the question of reasonableness, that is, whether the product design selected was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware.[15] It does not render a manufacturer's choice of design immune from liability.[16] That is not to say that evidence of such compliance is not significant, for it is. But, instead of acting as an impenetrable shield from liability, compliance, more appropriately, is to be a piece of the evidentiary puzzle.[17]

The focus of the Safety Act is to reduce deaths and injuries from automotive accidents by promoting and enhancing safer automobile design. To that end, we determine that our state common law permits its citizens to pursue a personal injury product liability claim against an automobile manufacturer even if the automobile is in compliance with the Safety Act.[18] This decision will not make the manufacturer an insurer of its product, for there is no duty to design an accident-proof vehicle. All we do today is affirm that proof of compliance with federal standards or regulations will not bar manufacturer liability for design defect as a matter of law.

*Question answered. All the Justices concur, except Fletcher, P. J., who dissents.*

FLETCHER, Presiding Justice, dissenting.

Because it is unreasonable under the risk-utility analysis to deem a manufacturer negligent for choosing of one of three safety restraint options authorized under Federal Motor Vehicle Safety

---

[13] *Medtronic, Inc. v. Lohr*, 518 U. S. ___ (116 SC 2240, 2251, 135 LE2d 700) (1996).

[14] *Kimbrel* is overruled to the extent that it conflicts with the *Banks* standard for product liability design defect cases.

[15] See *Banks* at 734, 736.

[16] See Restatement (Third) of Torts: Products Liability, § 7 (b) (Tentative Draft No. 2 1995) (a product's compliance with an applicable product safety statute or regulation is properly considered in determining whether a product is defective, but does not necessarily preclude as a matter of law a finding of product defect); Restatement (Second) of Torts, § 288C (1965) (compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions); W. Keeton et al., Prosser and Keeton on the Law of Torts, 233 (5th ed. 1984) (compliance with a statutory standard is evidence of due care, it is not conclusive on the issue).

[17] See *Shipp v. General Motors Corp.*, 750 F2d 418, 421 (5th Cir. 1985).

[18] See *Polston v. Boomershine Pontiac-GMC Truck*, 262 Ga. 616, 618 (423 SE2d 659) (1992). (There is a question of public policy when considering a position which diminishes the incentive of automobile manufacturers to design their products in a responsible fashion. Products actions have deterrent value.)

Standard 208, I dissent.

In *Banks v. ICI Americas*[19] this Court adopted the risk-utility analysis for a design-defect products liability action. In a footnote, the court "note[d] that a manufacturer's proof of compliance with industry-wide practices, state of the art, or federal regulations does not eliminate conclusively its liability for its design of allegedly defective products."[20] Federal Motor Vehicle Safety Standard 208, which is involved in this case, was not applicable in *Banks*. Therefore, *Banks* is merely a starting point for the question presented in this case.

In *Banks* this Court reaffirmed the principle that Georgia products liability law does not render a manufacturer an insurer against all possible injuries from its product.[21] This Court also stated that the concept of "reasonableness" is inherent in the risk-utility analysis. This concept of reasonableness includes whether the manufacturer acted reasonably in choosing a particular design and the reasonableness of the burden on the manufacturer to take steps necessary to eliminate any risk.[22]

At the time Doyle's automobile was manufactured, Standard 208 required car makers to exercise one of three options in installing passive restraint devices. This Court is bound by the Eleventh Circuit's determination that Volkswagen complied fully with one of these options in installing a passive restraint in Doyle's vehicle. Doyle's allegations are not that the option chosen was defectively designed or manufactured, but rather that Volkswagen was negligent because it failed to choose another option. When considering the concept of reasonableness in this context, it would be absurd and unfair to allow a jury to say Volkswagen acted unreasonably in choosing one particular design, when it was required to choose one of three and authorized to choose the one it did.

Additionally, recognizing Doyle's claim in this case would result in countless suits and contradictory verdicts. In each case, car makers would face allegations that a plaintiff's injuries would have been less if passive restraints were used instead of manual restraints, or if airbags were used instead of seatbelts, or if manual restraints were used instead of airbags. The conflicting verdicts from such litigation would not encourage the manufacture of safer cars. It would simply place a huge and unreasonable burden on car makers.

Finding that Georgia law would not recognize a claim based on a manufacturer's choice of one restraint over another authorized by

---

[19] 264 Ga. 732 (450 SE2d 671) (1994).
[20] Id. at 736, n. 6.
[21] Id. at 737.
[22] Id. at 734.

Standard 208 is also supported by the Georgia legislation in this area. OCGA § 40-8-76.1 requires that while a passenger vehicle is being operated on a public road all front seat occupants must be restrained by seatbelts approved under Standard 208. This express provision demonstrates some deference by the legislature to federal standards with regard to passenger restraint devices. Finally, an appellate court of this state[23] and other states considering this issue have also concluded that within the limited field covered by Standard 208, compliance with the federal standard precludes a common-law action, even under the risk-utility analysis.[24]

For these reasons I would hold that compliance with Standard 208 precludes a products liability claim premised merely on a manufacturer's choice of one option under Standard 208 over another.

DECIDED MARCH 3, 1997.

*Word & Simmons, Gerald P. Word, Tisinger, Tisinger, Vance & Greer, Kevin B. Buice, Doffermyre, Shields, Canfield & Knowles, Foy R. Devine,* for appellants.

*Welch, Spell, Reemsnyder & Pless, Ronald D. Reemsnyder,* for appellees.

*Butler, Wooten, Overby, Cheeley & Pearson, Albert M. Pearson III, Keith A. Pittman, Joshua Sacks, Samuel W. Oates, Jr., Franklin, Taulbee, Rushing, Bunce & Brogdon, Elizabeth F. Bunce, King & Spalding, Chilton D. Varner, Steven J. Estep, Webb, Tanner & Powell, Ralph L. Taylor III, Cathey & Strain, Dennis T. Cathey, James E. Staples, Jr., David A. Sleppy,* amici curiae.

[23] *Honda Motor Co. v. Kimbrel,* 189 Ga. App. 414 (376 SE2d 379) (1988), cert. denied, 189 Ga. App. 912 (1989).

[24] See *Cooper v. General Motors Corp.,* No. 92-CA-01334-SCT (1996 Miss. LEXIS 265); *Schwartz v. Volvo North America Corp.,* 554 S2d 927 (Ala. 1989). The majority of courts addressing this type of suit reach the same result by focusing on federal preemption. See *Cooper,* 1996 Miss. LEXIS at 11 (citing cases).