United States Court of Appeals,

Eleventh Circuit.

No. 94-8519.

Victoria DOYLE, Duffey Doyle, Plaintiffs-Appellants,

v.

VOLKSWAGENWERK AKTIENGEL- ELLSCHAFT, Volkswagen of America, Inc., Defendants-Appellees.

April 24, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:91-CV-1926-JEC), Julie E. Carnes, Judge.

Before TJOFLAT, Chief Judge, BARKETT, Circuit Judge, and CLARK, Senior Circuit Judge.

CLARK, Senior Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO O.C.G.A. § 15-2-9.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves an unanswered question of Georgia law that is determinative of this appeal. Therefore, we certify the following question of law, based on the facts recited below, to the Supreme Court of Georgia for instructions.

THE FACTS AND PRIOR PROCEEDINGS

This is a defective products case brought by plaintiffs-appellants Victoria and Duffey Doyle in the United States District Court for the Northern District of Georgia. Victoria Doyle alleged that she purchased a new 1989 Volkswagen Jetta, which was manufactured by defendant-appellee Volkswagen

Aktiengelellschaft and imported into the United States by defendant-appellee Volkswagen of America, Inc. The Jetta was equipped with an automatic shoulder belt that required no action by the vehicle occupants. By design, the Jetta did not have a lap belt at the driver's or front seat passenger's position; instead, it used knee bolsters to prevent a person from sliding under the belt during a collision.

On August 18, 1989, while driving her new Jetta, Victoria Doyle was struck in the rear by another vehicle. As a result of the collision, Ms. Doyle sustained severe injuries to her right breast. Ms. Doyle's experts are prepared to testify that these injuries were caused by the shoulder belt and were exacerbated by the absence of a lap belt: without a lap belt to absorb a portion of the force of the impact, a majority of the force of the impact was focused on Ms. Doyle's right breast.

Plaintiffs' complaint set out three theories of liability: negligence, strict liability, and breach of the implied warranty of fitness. Plaintiffs filed a motion for partial summary judgment with the district court and provided the court with various literature outlining the alleged known dangers of the shoulder belt only system. Defendants also filed a motion for partial summary judgment. They alleged that the Jetta seat belt system complied with the Federal motor vehicle safety standards promulgated under the authority of the National Traffic and Motor Vehicle Safety Act;[1] defendants argued that they were entitled to judgment as a

_____

[1]Pub.L. No. 89-563, 80 Stat. 718 (1966) (codified at 15 U.S.C. §§ 1381-1431).

matter of law because either (1) they had no duty under Georgia law to exceed these federal standards, or (2) plaintiffs' common law claims were preempted by the federal standards.

The district court granted defendants' motion for partial summary judgment and denied plaintiffs' motion. The court concluded that the Jetta seat belt system complied with the applicable federal standards, notwithstanding the absence of a lap belt. We concur in that conclusion. The district court further concluded that Georgia law as delineated in *Honda Motor Co. v. Kimbrel*[2] does not hold automobile manufacturers to a higher standard than federal requirements; thus, a plaintiff cannot recover under Georgia law for negligently creating a defective condition when the manufacturer is in compliance with federal standards. Because the Jetta seat belt system at issue was in compliance with federal standards, the court concluded that defendants could not be liable to plaintiffs as a result of the absence of a lap belt. Finding plaintiffs' claims precluded under Georgia law, the district court found it unnecessary to reach the preemption issue.

At the end of its decision, the district court noted that defendants had not delineated on which counts they sought partial summary judgment. Thus, the court directed the parties "to file a joint statement within twenty days outlining the issues remaining to be determined." The parties filed a joint statement agreeing that the district court's ruling effectively precluded all of

_____

[2]189 Ga.App. 414, 376 S.E.2d 379 (1988), *cert. denied* (Feb. 15, 1989).

plaintiffs' claims.  The district court then entered judgment for defendants, and plaintiffs appealed.

Since the district court's decision, this circuit has expressly held that standards promulgated under the National Traffic and Motor Vehicle Safety Act do *not* preempt common law claims.  *Myrick v. Freuhauf Corp.,* 13 F.3d 1516 (11th Cir.), *cert. granted,* --- U.S. ----, 115 S.Ct. 306, 130 L.Ed.2d 218 (1994).  The Supreme Court recently affirmed this circuit's decision. *Freightliner Corp. v. Myrick,* --- U.S. ----, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

## DISCUSSION

Although we agree defendants are correct that the Jetta seat belt system complies with applicable federal standards, we must determine whether the district court correctly interpreted Georgia law.  In concluding that Georgia law precludes automobile product liability claims when the manufacturer has complied with applicable federal standards, the district court relied on *Honda Motor Co. v. Kimbrel.*  In *Kimbrel,* the plaintiff was injured in a collision that occurred while she was driving a Honda Accord.  The plaintiff alleged that Honda Motor Company had created a defective condition by failing to equip the car with airbags, which were not required under the applicable federal regulations.  The court began by saying:

> The parties have argued exhaustively regarding preemption by federal law, but we must first determine if there is *any* right to recover under Georgia law, because preemption results where state law conflicts with or is more stringent than federal law and regulations.[3]

---

[3]376 S.E.2d at 382 (footnote omitted).

The court then went on to conclude that the plaintiff was without any right to recover under Georgia law because Honda Motor Company had complied with applicable federal standards:

> Because the Georgia standard of duty does not exceed the federal, Georgia would mandate only that federal standards be met. See Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1981). When the case law and statutory pattern are combined the result is that recovery for negligent product design could not be had against the manufacturer of a vehicle in compliance with federal regulations as to safety restraints. In these circumstances there would be no basis for requiring a manufacturer to furnish passive restraints or airbags in lieu of safety belts and a jury would not be authorized to find any breach of duty in the failure to supply them to a consumer.[4]

Thus, on the facts before it, the Georgia Court of Appeals held that Georgia law precludes automobile product liability claims when the manufacturer has complied with applicable federal standards.

We agree that the Georgia Court of Appeals correctly decided *Kimbrel.* In that case it was shown the manufacturer had complied with the National Safety Standards Act by installing the required seat belts. Plaintiff's only complaint was that the manufacturer should have installed air bags. Our court in *Taylor v. General Motors Corp.*[5] had the identical factual setting in a diversity case arising in Florida. In *Taylor* we first discussed two key provisions in the Safety Act:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to

---

[4]*Id.* at 383.

[5]875 F.2d 816 (11th Cir.1989).

the Federal standard.[6]

* * * * * *

Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.[7]

Our court made reference to the fact that the Safety Act "grants automobile manufacturers the option of complying with federal standards for occupant crash protection by installing manual seat belts instead of airbags." After discussing the cases governing express and implied preemption, the panel in *Taylor* concluded:

> *de la Cuesta* [458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) ] governs this case. It holds that a state common law rule cannot take away the flexibility provided by a federal regulation, and cannot prohibit the exercise of a federally granted option. *See id.* In accordance with *de la Cuesta,* we conclude that a state common law rule that would, in effect, *remove the element of choice* authorized in Safety Standard 208 would frustrate the federal regulatory scheme. We therefore hold that appellants' theory of recovery is impliedly preempted by Safety Standard 208 and the Safety Act.[8]

While *Taylor* endorses the Georgia Court's ruling in *Kimbrel,* it makes clear that preemption exists only when there is a *conflict* between federal and state law, as there would have been had *Kimbrel* been decided otherwise. In the present case, plaintiff alleged two common law actions: Count Two in negligence and Count Three in breach of implied warranty of fitness. We view the district court as not allowing plaintiff to seek relief in her common law actions. That court did rely upon this statement in *Kimbrel:* "Because the Georgia standard of duty does not exceed the federal, Georgia would

---

[6] 15 U.S.C. § 1392(d) (1982).

[7] *Id.* § 1397(c).

[8] 875 F.2d at 827 (emphasis added) (footnote omitted).

mandate only the federal standards be met."[9]

The purpose of this certification to the Georgia Supreme Court is to determine whether the quoted statement is correct. The United States Supreme Court has said: "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."[10] Thus, this court must follow *Kimbrel* unless there is "persuasive data" that the Supreme Court of Georgia might render a decision contrary to *Kimbrel.*

We find in *Banks v. ICI Americas, Inc.,* "persuasive data" that the Supreme Court of Georgia *might* render a decision contrary to *Kimbrel.*[11] In *Banks,* the parents of a child who died after ingesting a pesticide brought suit alleging that the pesticide was defectively designed. The Supreme Court of Georgia used the *Banks* opinion to articulate a new "risk-utility analysis" to be applied in design defect cases: "[W]e conclude that the better approach is to evaluate design defectiveness under a test balancing the risks inherent in a product design against the utility of the product so designed."[12] The court then set out in a footnote a "non-exhaustive list of general factors" to be considered in applying this new

[9]376 S.E.2d at 383.

[10]*West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.E. 139 (1940).

[11]264 Ga. 732, 450 S.E.2d 671 (1994).

[12]*Id.* at 674.

analysis; at the end of the list is this statement:

> We note that a manufacturer's proof of compliance with industry-wide practices, state of the art, or federal regulations does not eliminate conclusively its liability for its design of allegedly defective products.[13]

We find in this language "persuasive data" that the Supreme Court of Georgia may not conclude that Georgia law precludes product liability claims when the manufacturer has complied with federal standards.

Accordingly, we certify the following question to the Supreme Court of Georgia:

> WHEN AN AUTOMOBILE MANUFACTURER SELLS AN AUTOMOBILE TO A GEORGIA CITIZEN AND THE AUTOMOBILE IS IN COMPLIANCE WITH THE NATIONAL AUTOMOBILE SAFETY ACT, DOES GEORGIA LAW PRECLUDE A PERSONAL INJURY PRODUCT LIABILITY CLAIM?

The entire record in this case and the briefs of the parties shall be transmitted to the Supreme Court of Georgia for assistance in answering this question.

QUESTION CERTIFIED.

---

[13]*Id.* at 675 n. 6.